TUCKER, Judge.
The claim of Mary Kelly against Joseph Jones and Robert Carter, is founded upon a similar promise (as in the case of Jones and Carter v. Roberts) alleged to have been made by James Lane as Carter’s agent,.to Kelly, husband of Mary. Kelly, the complainant, of a lease for three lives, for the lot in question : which promise, the bill charges that Robert Carter positively refused to comply with. Carter in his answer denies knowledge of the agreement, or that any entry was made by Lane in- any book to that effect: and says, that he does not recollect to *have ever executed .any lease for the lot; but believes that Thomas Kelly was tenant at will only. The bill also charges, and Carter’s answer admits, ■that, by advertisement of the 1st of January, 1779, and 1780, Carter called upon all persons having claims for leases under promises made by any of his agents, particularly Lane, who was then dead, to send, in copies of any written memorandums from any of them, before the 1st of June following, certified under the hand of John Hough, and the executors of James Lane, that he might execute leases accordingly;. but notwithstanding, he refuses to do so. William. Lane, jr. states, that, after the death of his father, he had in his possession a book kept by his father, which contained a memorandum thatThomas Kelly was to have the lot in question for three lives; and that he either gave the book to some person interested in Carter’s lands, or destroyed it. Another witness says, that he heard Mrs. Keily acknowledge, that her husband, Thomas Kelly, often applied to Robert Carter for a lease, but was as often rejected by Carter, who said he was not entitled to one. It does not appear when Kelly died, but from the general com plexion of the record, it must have been a long time ago ; particularly as Robert Carter’s advertisement of the 1st of January, 1779, shews that James Lane was then dead. In other respects the case is nearly the same with that of Robert’s.
Nine years having elapsed after the expiration of the time appointed by Robert Carter’s first advertisement, and eight after that limited by the second, before the compromise between Robert and Charles Carter, Thomas Kelly, upon the principles established in the case of Richardson v. Baker, in this court, [5 Call, 514,] was, if living, completely barred in equity from a specific performance of James Lane’s promise. The letters of Charles Carter (if deserving notice in a court of equity, when the obvious intent of them was to make a covert proposition of cham-perty to the tenants of the person with whom he had a suit for the lands), could not be considered as attaching a covenant *or agreement to the lands, even though they should be thought binding .upon the conscience of the writer. And, consequently, could not operate to the prejudice of any future purchaser from him. The purchaser was bound to take notice of legal incumbrances only, and not of promises made, or accepted, malo intuitu. I throw these letters, as well as the declarations of Mr. Carter’s counsel, .made at the time of the trial, entirely out of the case; and, in that view, say, that Thomas Kelly, or his representatives, if he were dead in 1779 or 1780, would be completely barred by their laches, were there no other circumstances in the case which operated against them.
But how does Mrs. Kelly claim title to the execution of the promise made by Lane to Thomas Kelly ? She must claim either as heir, or executrix, of Thomas Kelly, or as occupant of the land.
Obsolete as her counsel considers the doctrines of the common law, relative to estates pur autre vie, they are still the law of the land, except in cases subsequent to our statute on the subject. (Virg. Laws, 1794, ch. 92, sect. 54.) Consequently, had Thomas Kelly obtained a lease for the iands in his lifetime, and died in possession, and appointed her his executrix, she could not have taken the same by virtue thereof ; nor is it pretended, that she was his heir. Now, no point of law is more settled, than that an estate pur autre vie, which is a freehold, could not go to executors, before the statute; and she does not pretend to claim as heir, even if heirs had been named, which they are not. Co. Litt. 41, b. ; Vaugh. 190, 194. Now, will equity pretend to give her a title to an estate, to-which, if there had been a legal title made, according to the nature of it, she could have had no claim, either as heir, or executrix ? Great- and comprehensive as the powers claimed and exercised by courts of equity are,. I cannot conceive they could ever reach so far.
But, however, the doctrine of title by occupancy was opposed by her counsel in the case of Roberts, perhaps it might be thought to serve her turn, that she might have been occupant of the land, had there been an actual lease, is very possible, since we hear of no son of Thomas Kelly, who, being upon the land at the time of his death, might have disputed that title with her, according to the authority from 4 Com. Dig. 44. But I lay it down as an undeniable principle, that there can be no occupancy of an estate pur autre vie, unless there be a legal estate, and not a mere equitable title or claim to a lease. Eor, whoever claims as occupant, must claim by a que estate, aver the life of cestui que vie, and shew the deed whereby the estate is created. Co. Litt. 41, b.; Vaugh. 190, 194; Cro. Jac. 673. And this is proved by the reason of the thing ; for the title of the occupant is allowed in law from necessity only, because the owner of the inheritance has by his deed, or will, separated the freehold and possession from the inheritance. So that he,' in whom the inheritance is, has no title as owner of the inheritance, to enter, during the life of cestui que vie, upon him who first takes possession of the lands thus become vacant by the death of the tenant pur autre vie, and make him the tenant, not as heir or executor, but as occupant. But where no lease has been made, the freehold and inheritance remain united in the person *1131 of him to whom the inheritance belongs : In this case, there can be no vacant possession, or hereditas jacens ; for the possession of a tenant, without a lease, is the possession of the landlord, and the tenant is a mere tenant at will, and if he dies, or leaves the premises, the landlord tnay enter as owner of the soil, and not merely a« occupant. This being the case, Mary Kelly could never have been more than a bare, tenant at will to Robert Carter, without any title, either at law, or in equity, to a lease for three lives, because such a lease was promised to her husband.
But were it otherwise, the waste committed, and the unconscientious use which she appears to have made of the possession which she acquired, would, for the same reasons as were mentioned in Robert’s case, in my opinion, preclude her from the aid of a court of equity.
*Note. — This case, as well as the preceding case of Jones v. Roberts, was argued in the year 1805, in the lifetime of Mr. Jones. Judge Tucker, at that time, prepared his opinion in both cases; but Mr. Jones dying, the judgment, in neither, was pronounced, until April 1809, when the case of Jones v. Roberts was decided ; but this of Kelly was suffered to abate, although it is not known that there was any difference of opinion among the judges on it. And therefore it is probable that it was amicably adjusted by the parties.